**No. 21-16958 (lead), 21-16960, 21-16961**

# In the United States Court of Appeals
## FOR THE NINTH CIRCUIT

IN RE: CLEAN WATER ACT RULEMAKING

AMERICAN RIVERS; AMERICAN WHITEWATER; CALIFORNIA TROUT; IDAHO RIVERS
UNITED; COLUMBIA RIVERKEEPER; SIERRA CLUB; SUQUAMISH TRIBE; PYRAMID LAKE
PAIUTE TRIBE; ORUTSARARMIUT NATIVE COUNCIL; STATE OF CALIFORNIA; STATE
WATER RESOURCES CONTROL BOARD; STATE OF OREGON; STATE OF NEW JERSEY;
STATE OF NEW YORK; STATE OF MARYLAND; STATE OF RHODE ISLAND; STATE OF
COLORADO; DISTRICT OF COLUMBIA; STATE OF NORTH CAROLINA; COMMONWEALTH OF
VIRGINIA; STATE OF NEW MEXICO; STATE OF VERMONT; STATE OF MINNESOTA; STATE
OF CONNECTICUT; STATE OF WASHINGTON; STATE OF MICHIGAN; COMMONWEALTH OF
MASSACHUSETTS; STATE OF NEVADA; STATE OF WISCONSIN; STATE OF MAINE; *and*
STATE OF ILLINOIS,
PLAINTIFFS-APPELLEES,
*v.*
MICHAEL S. REGAN[*] *and* U.S. ENVIRONMENTAL PROTECTION AGENCY,
DEFENDANTS,
*and*
AMERICAN PETROLEUM INSTITUTE, INTERSTATE NATURAL GAS ASSOCIATION OF
AMERICA, *and* NATIONAL HYDROPOWER ASSOCIATION,
INTERVENORS-DEFENDANTS-APPELLANTS
AND
STATE OF ARKANSAS; STATE OF LOUISIANA; STATE OF MISSISSIPPI; STATE OF MISSOURI;
STATE OF MONTANA; STATE OF WEST VIRGINIA; STATE OF WYOMING; *and* STATE OF
TEXAS,
INTERVENORS-APPELLANTS.

On Appeals from the U.S. District Court
for the Northern District of California
Case Nos. 3:20-cv-04636-WHA, -04869-WHA, -06137-WHA
The Honorable William H. Alsup, Judge

## INTERVENOR-DEFENDANTS-APPELLANTS' AND
## INTERVENORS-APPELLANTS' OPENING BRIEF

[*] EPA Administrator Regan was automatically substituted for his predecessor, Andrew R.
Wheeler, under Fed. R. App. P. 43(c)(2).

**No. 21-16958 (lead), 21-16960, 21-16961**

*[Counsel Listed On Following Pages]*

GEORGE P. SIBLEY, III
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
(804) 788-8262
(804) 788-8218 (fax)
gsibley@huntonak.com
dduncan@huntonak.com

DIERDRE G. DUNCAN
ERICA N. PETERSON
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave., NW
Washington, DC 20037
(202) 955-1932
epeterson@huntonak.com

CLARE ELLIS
HUNTON ANDREWS KURTH LLP
50 California Street
Suite 1700
San Francisco, CA 94111
(415) 975-3708
(415) 975-3701 (fax)
cellis@huntonak.com

*Attorneys for Intervenor-*
*Defendants-Appellants*
*American Petroleum Institute*
*and Interstate Natural Gas*
*Association of America*

MISHA TSEYTLIN
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 W. Monroe Street,
Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com

CHARLES SENSIBA
TROUTMAN PEPPER HAMILTON
SANDERS LLP
401 9th Street NW
Suite 1000
Washington, DC 20004-2146
(202) 274-2850
(202) 274-2994 (fax)
charles.sensiba@troutman.com

ELIZABETH HOLT ANDREWS
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Three Embarcadero Center
Suite 800
San Francisco, CA 94111-4057
(415) 477-5700
(415) 477-5710 (fax)
elizabeth.andrews@troutman
.com

*Attorneys for Intervenor*
*Defendant-Appellant National*
*Hydropower Association*

**No. 21-16958 (lead), 21-16960, 21-16961**

ELIZABETH B. MURRILL,
SOLICITOR GENERAL
JOSEPH S. ST. JOHN,
DEPUTY SOLICITOR
LOUISIANA DEPARTMENT
OF JUSTICE
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6739
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

*Attorneys for Intervenor
Defendant-Appellant State of
Louisiana*

JAMES KASTE
DEPUTY ATTORNEY GENERAL
WYOMING ATTORNEY GENERAL'S
OFFICE
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895 (phone)
(307) 777-3542 (fax)
james.kaste@wyo.gov

Additional Counsel:

LESLIE RUTLEDGE
  Attorney General of Arkansas

LYNN FITCH
  Attorney General of
Mississippi

ERIC SCHMITT
  Attorney General of Missouri

AUSTIN KNUDSEN
  Attorney General of Montana

KEN PAXTON
  Attorney General of Texas

PATRICK MORRISEY
  Attorney General of West
Virginia

# CORPORATE DISCLOSURE STATEMENTS

Pursuant to Federal Rule of Appellate Procedure 26.1(a), American Petroleum Institute states that it has no parent corporation and no publicly held company owns 10% or more of its stock.

Dated: April 6, 2022

/s/ George P. Sibley, III

GEORGE P. SIBLEY, III

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Interstate Natural Gas Association of America states that it has no parent corporation and no publicly held company owns 10% or more of its stock.

Dated: April 6, 2022

/s/ George P. Sibley, III

GEORGE P. SIBLEY, III

Pursuant to Federal Rule of Appellate Procedure 26.1(a), National Hydropower Association states that it has no parent corporation and no publicly held company owns 10% or more of its stock.

Dated: April 6, 2022

/s/ Misha Tseytlin

MISHA TSEYTLIN

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................ 1

JURISDICTIONAL STATEMENT ........................................... 4

STATEMENT OF ISSUES .................................................... 7

STATEMENT OF THE CASE ................................................ 8

   I.  Clean Water Act ...................................................... 8

   II.  Certain States Abused Their Section 401 Certification
     Authority ................................................................ 9

   III. EPA Adopts The Section 401 Certification Rule ............ 10

   IV. This Lawsuit And The Order Vacating The Rule ............ 12

SUMMARY OF ARGUMENT .................................................. 16

ARGUMENT .......................................................................... 17

   I.  The APA Precludes The District Court From Vacating A Rule
     Without Finding It Unlawful Based on Review of the Full
     Administrative Record and Briefing on the Merits ...................... 17

   II.  The District Court's Application Of The *Allied-Signal* Factors
     Was Erroneous, Even If It Were Proper To Apply That Test
     Here ..................................................................... 32

CONCLUSION ...................................................................... 41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcoa Power Generating Inc. v. FERC,*
    643 F.3d 963 (D.C. Cir. 2011) ........................................................ 10, 35

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission,*
    988 F.3d 146 (D.C. Cir. 1993) ..................................................... *passim*

*Alsea Valley All. v. Dep't of Commerce,*
    358 F.3d 1181 (9th Cir. 2004) .......................................................... 5, 7

*Am. Ironworks v. N. Am. Constr.,*
    248 F.3d 892 (9th Cir. 2001) ................................................................ 5

*Beveridge v. City of Spokane,*
    No. 20-35848, 2021 WL 3082003 (9th Cir. July 21, 2021) .................. 5

*Bowen v. Georgetown Univ. Hosp.,*
    488 U.S. 204 (1988) .............................................................................. 24

*Brown v. Gen. Servs. Admin.,*
    425 U.S. 820 (1976) .............................................................................. 20

*Cal. Cmtys. Against Toxics v. EPA (CCAT),*
    688 F.3d 989 (9th Cir. 2012) ....................................................... *passim*

*California v. FERC,*
    495 U.S. 490 (1990) .............................................................................. 38

*Carlson v. Postal Regulatory Comm'n,*
    938 F.3d 337 (D.C. Cir. 2019) ....................................................... 33, 35

*Carpenters Indus. Council v. Salazar,*
    734 F. Supp. 2d 126 (D.D.C. 2010) .................................................... 29

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1971), *abrogated on other grounds by*
*Califano v. Sanders,* 430 U.S. 99 (1977) ................................... *passim*

*City of Milwaukee v. Ill. & Mich.,*
451 U.S. 304 (1981) .............................................................. 8

*In re Clean Water Act Rulemaking,*
2021 WL 4924844 (N.D. Cal. Oct. 21, 2021) ....................................... 39

*In re Clean Water Act Rulemaking,*
No. 3:20-cv-04636-WHA (N.D. Cal.) .................................................. 12

*In re Clean Water Act Rulemaking,*
No.3:20-cv-04869-WHA (N.D. Cal.) ................................................... 12

*Crow Indian Tribe v. United States,*
965 F.3d 662 (9th Cir. 2020) ................................................... 5, 7

*Ctr. for Native Ecosystems v. Salazar,*
795 F. Supp. 2d 1236 (D. Colo. 2011) ........................................ *passim*

*Darby v. Cisneros,*
509 U.S. 137 (1993) ...................................................... 19, 31

*Del. Riverkeeper Network v. U.S. EPA,*
No. 2:20-cv-3412, 2021 WL 3476173 (E.D. Pa. Aug. 6,
2021) ............................................................................ 13

*East Bay Sanctuary Covenant v. Biden,*
993 F.3d 640 (9th Cir. 2021) ..................................................... 35

*Franklin v. Gwinnett Cnty. Pub. Sch.,*
503 U.S. 60 (1992) ............................................................. 20

*Great Atl. & Pac. Tea Co. v. Cottrell,*
424 U.S. 366 (1976) ............................................................ 40

*Grupo Mexicano de Desarrollo, SA v. Alliance Bond Fund,*
527 U.S. 308 (1999) ............................................................ 27

*Harmon v. Thornburgh*,
   878 F.2d 484 (D.C. Cir. 1989) .................................................... 35

*Hoopa Valley Tribe v. FERC*,
   913 F.3d 1099 (D.C. Cir. 2019) ........................................... 10

*Michelin Tire Corp. v. Wages*,
   423 U.S. 276 (1976) ............................................................... 40

*Montes v. United States*,
   37 F.3d 1347 (9th Cir. 1994) ........................................ 4, 5, 6

*N.Y. State Dep't of Envtl. Conservation v. FERC*,
   884 F.3d 450 (2d Cir. 2018) ......................................... 10, 35

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
   545 U.S. 967 (2005) ...................................................... 24, 34

*Nat'l Parks Conservation Ass'n v. Salazar*,
   660 F. Supp. 2d 3 (D.D.C. 2009) ......................................... 29

*NLRB v. Wyman-Gordon Co.*,
   394 U.S. 759 (1969) ............................................................... 21

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co. (AZ)*,
   632 F.3d 1111 (9th Cir. 2011) ............................................. 28

*Patel v. Del Taco, Inc.*,
   446 F.3d 996 (9th Cir. 2006) ........................................... 4, 6

*Perez v. Mortgage Bankers Ass'n*,
   575 U.S. 92 (2015) ................................................................. 21

*Pit River Tribe v. U.S. Forest Serv.*,
   615 F.3d 1069 (9th Cir. 2010) ........................................... 6, 7

*Pollinator Stewardship Council v. EPA*,
   806 F.3d 520 (9th Cir. 2015) .................................. 14, 25, 32

*Porter v. Warner Holding Co.*,
  328 U.S. 395 (1946) ................................................................ 28

*PUD No. 1 of Jefferson County v. Washington Department of Ecology*,
  511 U.S. 700 (1994) ................................................ 15, 24, 34

*Regan v. Time, Inc.*,
  468 U.S. 641 (1984) ................................................................ 35

*Rust v. Sullivan*,
  500 U.S. 173 (1991) ................................................................ 24

*S.C. Coastal Conservation League v. Wheeler*,
  No. 2:20-cv-03062 (D.S.C. Aug. 2, 2021) ............................ 13

*Sampson v. Murray*,
  415 U.S. 61 (1974) .................................................................. 19

*Schillinger v. United States*,
  155 U.S. 163 (1894) .......................................................... 18, 31

*SEC v. Chenery Corp.*,
  318 U.S. 80 (1943) .................................................................. 25

*Skagit Cty. Pub. Hosp. Dist. No. 2 v. Shalala*,
  80 F.3d 379 (9th Cir. 1996) .................................................. 6, 7

*Turlock Irrigation Dist. & Modesto Irrigation Dist.*,
  175 FERC ¶ 61,144 ................................................................ 38

*Turlock Irrigation Dist. v. FERC*,
  No. 21-1120 (D.C. Cir.) .................................................... 38, 39

*United States v. Nixon*,
  418 U.S. 683 (1974) .......................................................... 20, 22

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
  435 U.S. 519 (1978) ........................................... 3, 17, 20, 31

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ....................................................................27, 28

**Statutes**

Administrative Procedure Act (APA)
   5 U.S.C. § 551, et seq. (1946) ....................................................*passim*

5 U.S.C. § 551(5) ..................................................................21, 37

5 U.S.C. § 553 ................................................................................21

5 U.S.C. § 553(b) ..........................................................................37

5 U.S.C. § 553(c) ..........................................................................37

5 U.S.C. § 702 ................................................................19, 20, 31

5 U.S.C. § 702(1) ....................................................................19, 30

5 U.S.C. § 704 ..................................................................................4

5 U.S.C. § 705 ........................................................................19, 22

5 U.S.C. § 706 ..............................................................................30

5 U.S.C. § 706(2) .....................................................................*passim*

28 U.S.C. § 1291..............................................................................4

28 U.S.C. § 1331..............................................................................4

33 U.S.C. § 1251(b) ........................................................................9

Federal Water Pollution Control Act Amendments of 1972,
   Pub. L. 92-500, 86 Stat. 816, 877 (Oct. 16, 1972) (codified
   at 33 U.S.C. § 1341) ....................................................................9

33 U.S.C. § 1341(a)(1)..................................................................38

Judiciary Act, 1789 (1 Stat. 73) ................................................27

Water Quality Improvement Act of 1970, Pub. L. 91-224, 84
    Stat. 91 (Apr. 3, 1970) ............................................................... 8

**Regulations**

40 C.F.R. § 121.1 ................................................................. 10, 37

40 C.F.R. § 121.2 ......................................................................... 11

40 C.F.R. § 121.3 ......................................................... 11, 37, 39

40 C.F.R. § 121.4 ......................................................................... 11

40 C.F.R. §§ 121.5-9 ........................................................... 11, 37

40 C.F.R. §§ 121.11–121.16 ....................................... 12, 34, 37

44 Fed. Reg. 32,854 (June 7, 1979) ..................................... 36

84 Fed. Reg. 44,080 (Aug. 22, 2019) .................................... 22

85 Fed. Reg. 42,210 (July 13, 2020) ............................... *passim*

86 Fed. Reg. 29,541 (June 2, 2021) ..................................... 13

86 Fed. Reg. 7,037 (Jan. 25, 2021) ...................................... 13

**Legislative Histories**

H.R. Rep. 94-1656 (1976) ....................................................... 20

S. Rep. 94-996 (1976) .............................................................. 20

**Other Authorities**

Antonin Scalia, Vermont Yankee*: The APA, The D.C. Circuit,
    and The Supreme Court*, 1978 Sup. Ct. Rev. 345 .............. 21

Ronald M. Levin, "*Vacation" at Sea: Judicial Remedies and
    Equitable Discretion in Administrative Law*, 53 Duke L.J.
    291 (2003) ............................................................................ 26

# INTRODUCTION

Can a single district court vacate a rule, nationwide, that a federal agency adopted through notice-and-comment rulemaking without first finding the rule unlawful? The answer is plainly "no"—the Administrative Procedure Act ("APA") only allows courts to "set aside" an agency action that is arbitrary, capricious, or contrary to law. But in the decision below, a district court vacated nationwide a landmark rule adopted by the prior Administration, without even engaging with the APA, and without bothering to discuss most of the Rule's provisions. That decision is clearly wrong. And without prompt correction, it will become an easy-to-replicate blueprint for a new Administration's premature elimination of rules adopted by the prior Administration, with only the help of aligned plaintiffs and a single, sympathetic district court.

The rule at issue here is the 2020 Clean Water Act ("CWA") Section 401 Certification Rule (the "Rule"), a landmark and complicated rule the prior Administration adopted after a lengthy notice-and-comment rulemaking process to address concerns raised by States and regulated parties, including Intervenor-Appellants.

The Rule's opponents challenged it in cases filed in three federal district courts around the country. A few months later, the nation elected a new President who, upon assuming office, ordered EPA to revisit the Rule. EPA complied, initiating the administrative process to evaluate whether to repeal or revise the Rule. And because the potential changes could address challengers' arguments against the Rule, EPA asked the courts to remand it without vacatur.

Two of the district courts agreed to remand the Rule without disturbing the regulatory regime during remand, but the Northern District of California took an entirely different path. Even though the court had not found the Rule unlawful under the APA—indeed, it had not received a single merits brief or reviewed the administrative record—it took the extraordinary and unlawful step of vacating the Rule in its entirety and nationwide. The new Administration not-so-subtly welcomed the result. Relieved of the burden of changing the Rule through the administrative process, EPA did not appeal the district court's unlawful decision and sought actively to thwart Intervenor-Appellants' attempt to obtain a stay pending appeal.

The district court's unlawful decision must be reversed. The district court did not even attempt to grapple with the APA's clear text, which permits courts to "set aside" agency actions only when such actions are "found" to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "without observance of procedure required by law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2), or the Supreme Court's holding that courts may "set aside" federal agencies' actions "only for substantial procedural or substantive reasons as mandated by statute, not simply because the court is unhappy with the result reached." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 558 (1978) (citation omitted) (emphasis added). And, even if it were proper to apply the *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.3d 146 (D.C. Cir. 1993), test for vacatur of a rule without first finding the rule unlawful, as the court did below, the district court incorrectly applied that test.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331. The Final Rule constitutes final agency action subject to judicial review. 5 U.S.C. § 704. The district court order being appealed was issued on October 21, 2021, and judgment was entered on November 17, 2021. Intervenor-Appellants filed notices of appeal on November 17, 2021.

Notwithstanding arguments by EPA and Plaintiffs, 2-ER-49–51, 74–77; *see also* 2-ER-39, this Court has appellate jurisdiction over this case. Circuit courts have jurisdiction over appeals "from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. This Court gives the finality requirement "a practical rather than a technical construction," looking to "what effect the court intended it to have, rather than the label placed upon it," *Montes v. United States*, 37 F.3d 1347, 1350 (9th Cir. 1994), so "finality" exists whenever a decision "is a full adjudication of the issues" and "clearly evidences the judge's intentions that it be the court's final act in the matter," *Patel v. Del Taco, Inc.*, 446 F.3d 996, 1000 (9th Cir. 2006). Entry of final judgment is indicative that a district court intended its order to be final, *Montes*, 37

F.3d at 1350; *Beveridge v. City of Spokane*, No. 20-35848, 2021 WL 3082003, at *1 (9th Cir. July 21, 2021), and permits parties to appeal from prior, even interlocutory orders, *Am. Ironworks v. N. Am. Constr.*, 248 F.3d 892, 897 (9th Cir. 2001).

This Court generally considers orders remanding to an agency to be final if "(1) the district court conclusively resolves a separable legal issue, (2) the remand order forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding, and (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable." *Alsea Valley All. v. Dep't of Commerce*, 358 F.3d 1181, 1184 (9th Cir. 2004). But this rule only applies to an appeal by private parties "whose positions on the merits would be considered during the agency proceedings on remand," *Crow Indian Tribe v. United States*, 965 F.3d 662, 675 (9th Cir. 2020), and this Court will still "exercise [its] jurisdiction over a remand order" in the absence of those three elements if "a holding of nonappealability would effectively deprive the litigants of an opportunity to obtain review." *Alsea*, 358 F.3d at 1184–85 (citation omitted). Indeed, "*Alsea* did not announce a hard-and-fast rule prohibiting a non-agency litigant from appealing a remand order," *Pit*

-5-

*River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1075 (9th Cir. 2010), and this Court continues to give the finality determination in such instances "a practical construction," *Skagit Cty. Pub. Hosp. Dist. No. 2 v. Shalala*, 80 F.3d 379, 384 (9th Cir. 1996).

Here, the district court's vacatur order and final judgment provide this Court with appellate jurisdiction under any practical consideration of finality. The district court's order remanding the Rule to EPA with vacatur effectively ends the entire dispute. Indeed, Plaintiffs throughout this litigation sought "an order vacating the Final Rule or those portions determined to be unlawful," 4-ER-560, and the court's order grants that relief, 1-ER-21. *See Patel*, 446 F.3d at 1000. The district court's subsequent final judgment, "ensur[ing] appealability," clarifying that no issues remained, and closing the case, 1-ER-4, removed any doubt about finality, *Montes*, 37 F.3d at 1350.

That the order involved a remand to EPA does nothing to change this conclusion. The core issue raised by Intervenors on appeal is whether the district court even had the authority or jurisdiction to vacate the Rule without first determining its unlawfulness, *see infra* Argument Part I.A, an issue that will not "be considered during the agency

-6-

proceedings on remand," *Crow Indian Tribe*, 965 F.3d at 675, as EPA considers the merits of the Rule. Indeed, absent review now, Intervenors will not get any resolution on this important question, providing this Court appellate jurisdiction under "a practical construction" of the finality rule. *Skagit Cty.*, 80 F.3d at 384. Thus, regardless of whether the district court's vacatur order meets the criteria in *Alsea*—itself no "hard-and-fast rule," *Pit River Tribe*, 615 F.3d at 1075—this Court has appellate jurisdiction.

## STATEMENT OF ISSUES

1.     The APA only allows courts to "set aside" an agency action if it first finds that action is arbitrary, capricious, or contrary to law, based on a review of the administrative record. Can a federal district court vacate agency action promulgated after notice-and-comment rulemaking, without reviewing the record, receiving a single merits brief, or finding the action arbitrary, capricious or contrary to law, merely because the agency, after a change in administration, announces it intends to revisit the action?

2.     Under the *Allied-Signal* test, courts should evaluate the seriousness of deficiencies in a challenged agency rulemaking under

-7-

review, including whether the deficient portions of the rule can be severed from the rest of the rule, and the disruptive consequences of vacatur. Did the district court correctly apply *Allied-Signal* where it (a) did not actually find any of the Rule's provisions legally deficient; (b) failed to conduct a severability analysis; and (c) ignored the predictable and immediate disruptions vacatur of the Rule would cause.

## STATEMENT OF THE CASE

### I. Clean Water Act

In 1970, Congress required that "[a]ny applicant for a Federal license or permit to conduct any activity . . . which may result in any discharge into the navigable waters . . . shall provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate." Water Quality Improvement Act of 1970, Pub. L. 91-224, 84 Stat. 91, 108 (Apr. 3, 1970). Then, in 1972, Congress enacted the CWA, a "total restructuring" and "complete rewriting" of the nation's water-pollution-control laws, *City of Milwaukee v. Ill. & Mich.*, 451 U.S. 304, 317 (1981), narrowing the certification requirement from proof that any "*activity* . . . will not violate applicable *water quality standards*," 84 Stat. at 108 (emphases added), to whether a "*discharge*

-8-

will comply with" the CWA. Federal Water Pollution Control Act Amendments of 1972, Pub. L. 92-500, 86 Stat. 816, 877 (Oct. 16, 1972) (codified at 33 U.S.C. § 1341) (emphases added). Congress also created a prominent role for States and Tribes in implementing this new program. 33 U.S.C. § 1251(b). In particular, federal agencies cannot permit activities that may result in a discharge into waters of the United States unless any State or authorized Tribe where the discharge would originate certifies that the discharge complies with applicable water quality requirements or waives the requirement. 33 U.S.C. § 1341.

## II. Certain States Abused Their Section 401 Certification Authority

Despite the statutory change in 1972, EPA failed to revise its 1971 regulations governing the certification process. As a result, EPA's regulations were incongruent with the new statutory language.

Some States exploited this regulatory ambiguity to indefinitely extend the time for acting on a certification request or to deny permits based on non-water quality concerns, effectively vetoing projects. For example, the State of Washington denied certification based on purported concerns about the interstate rail system and the ability to accommodate additional vessels in ports, despite expressly concluding the project

would not result in significant adverse effects on water quality, aquatic life, or designated uses. *See* 2-ER-157. Similar examples of State and Tribal overreach abound in the administrative record. *See* 3-ER-523. Indeed, courts repeatedly recognized that States' gamesmanship was violating the CWA. *See, e.g.*, *Hoopa Valley Tribe v. FERC*, 913 F.3d 1099, 1104–05 (D.C. Cir. 2019); *N.Y. State Dep't of Envtl. Conservation v. FERC*, 884 F.3d 450, 455 (2d Cir. 2018); *Alcoa Power Generating Inc. v. FERC*, 643 F.3d 963, 972 (D.C. Cir. 2011).

## III. EPA Adopts The Section 401 Certification Rule

Pointing to these abuses, a coalition of states led by Louisiana petitioned for an update to the 1971 regulations to conform them to the 1972 CWA amendments, and to provide clarity and transparency. 85 Fed. Reg. 42,210 (July 13, 2020). EPA's response was in accord: "The Agency's longstanding failure to update its regulations created the confusion and regulatory uncertainty that were ultimately the cause of th[e] controversial section 401 certification actions" that underlay Louisiana's petition. *Id.* at 42,227.

The Rule fixes these problems. It begins by defining fourteen key terms, 40 C.F.R. § 121.1; *see also* 85 Fed. Reg. at 42,237, and it reaffirms

EPA's longstanding interpretation of when CWA Section 401 requires a water quality certification. 40 C.F.R. § 121.2; 85 Fed. Reg. at 42,237. It also sets out the permissible scope of certification, as developed through the rulemaking process. 40 C.F.R. § 121.3. The Rule ensures meaningful coordination between project proponents and State and Tribal certifying authorities before the certification process even begins, 40 C.F.R. § 121.4, and it provides uniform procedures for establishing the time period for States and Tribes to act on a certification request, clear rules for when that period begins and ends, and a procedure for communicating to all parties when the period begins and ends, 40 C.F.R. §§ 121.5-9. Furthermore, the Rule requires any action on a certification request—a grant, grant with conditions, or denial of certification—to be in writing and contain certain information that explains the State's or Tribe's action, or else certification is waived. 40 C.F.R. § 121.7; 85 Fed. Reg. at 42,256. The Rule also describes the effect of certain actions and explains how waiver of the certification requirement can occur proactively or by operation of law. 40 C.F.R. §§ 121.8–9. Finally, it provides a procedure for neighboring jurisdictions to participate in the certification process

and describes how certification conditions should be enforced. 40 C.F.R. §§ 121.11–16.

## IV. This Lawsuit And The Order Vacating The Rule

Plaintiffs are three groups who filed complaints in the U.S. District Court for the Northern District of California: a group of environmental organizations (collectively "Plaintiff Groups"), twenty States and the District of Columbia (collectively "Plaintiff States"), and conservation associations and Indian Tribes (collectively "Plaintiff Tribes"). ECF Nos.75, 96, 98, *In re Clean Water Act Rulemaking*, No. 3:20-cv-04636-WHA (N.D. Cal.). Louisiana and several other States, along with the American Petroleum Institute ("API"), the Interstate Natural Gas Association of America ("INGAA") and the National Hydropower Association ("NHA") (together, "Intervenor-Appellants"), intervened to defend the Rule. ECF Nos. 23, 27, 41, 62, *In re Clean Water Act Rulemaking*, No. 3:20-cv-04636-WHA (N.D. Cal.); ECF Nos. 75, 84, 113, *In re Clean Water Act Rulemaking*, No.3:20-cv-04869-WHA (N.D. Cal.).

In January 2021, President Biden directed agencies to "take action to address the promulgation of Federal regulations and other actions during the last 4 years that conflict with" his Administration's objectives,

EO 13,990, 86 Fed. Reg. 7,037 (Jan. 25, 2021). The Rule was one of them. EPA then announced its intention to reconsider the Rule, 86 Fed. Reg. 29,541 (June 2, 2021), and moved for remand without vacatur in all three of the pending challenges, 3-ER-452–69; ECF No. 67, *Del. Riverkeeper Network v. U.S. EPA*, No. 2:20-cv-3412 (E.D. Pa. July 1, 2021); ECF No. 67, *S.C. Coastal Conservation League v. Wheeler*, No. 2:20-cv-03062 (D.S.C. Aug. 2, 2021). The district courts in the District of South Carolina and Eastern District of Pennsylvania granted EPA's motions, remanding the Rule to EPA without vacatur. *Del. Riverkeeper Network v. U.S. EPA*, No. 2:20-cv-3412, 2021 WL 3476173, at *1 (E.D. Pa. Aug. 6, 2021); ECF No. 69, *S.C. Coastal Conservation League v. Wheeler*, No. 2:20-cv-03062 (D.S.C. Aug. 2, 2021).

The district court in this case took a decidedly different approach. In response to EPA's motion for remand without vacatur, Plaintiffs argued that the district court should remand to EPA while vacating the Rule in the interim. 2-ER-230–55; 3-ER-259–451. EPA nominally opposed these vacatur requests but only meekly, 2-ER-207–17, leaving Intervenor-Appellants here as the only parties that submitted full-throated oppositions to vacating the rule, 2-ER-122–206.

On October 21, 2021, the district court vacated the Rule, 1-ER-5–22, and entered final judgment, 1-ER-4—without ever receiving (let alone reviewing) the administrative record, without receiving (let alone considering) merits briefing on the Rule's legality, and without making a decision of whether the Rule is actually unlawful under the APA. The court reasoned that it had authority to take this step because nothing in the APA "expressly preclude[d]" it from issuing the equitable remedy of vacatur "without a decision on the merits." 1-ER-12. Instead of making any determination that the Rule is "unlawful" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the APA, 5 U.S.C. § 706(2), the court relied on a prior district court decision, *see Ctr. for Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1241–42 (D. Colo. 2011), inapposite cases from this Court, *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015); *Cal. Cmtys. Against Toxics v. EPA (CCAT)*, 688 F.3d 989, 992 (9th Cir. 2012), and principles of equity to conclude it could vacate the Rule nationwide, 1-ER-10–11.

The district court then improperly applied the two-step test for "considering vacatur of agency actions found to be erroneous," that the

D.C. Circuit had announced in *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.3d 146 (D.C. Cir. 1993). 1-ER-12. The district court concluded that although EPA did "not admit fault," one aspect of the Rule was "antithetical" to *PUD No. 1 of Jefferson County v. Washington Department of Ecology*, 511 U.S. 700 (1994), and noted that the court "harbor[ed] significant doubts" about other unspecified aspects of the Rule, 1-ER-17–18. The court also reasoned that because the Rule "has only been in effect for thirteen months," and "has been under attack since before day one," there was no justifiable reliance on the Rule. 1-ER-19. Intervenor-Appellants moved in the district court for a stay pending appeal, 2-ER-81–111, which the district court denied on December 7, 2021, 2-ER-26–39.

Intervenor-Appellants then sought a stay of the district court's decision pending appeal in this Court, which was denied. ECF No. 41. Intervenor-Appellants subsequently sought a stay pending disposition of a petition for writ of certiorari from the Supreme Court. In its response brief, EPA conceded that "the district court lacked authority to vacate the 2020 Rule without first determining that the Rule was invalid." Fed.

-15-

Resp., *Louisiana v. Am. Rivers*, No. 21A539 (U.S. Mar. 28, 2022). The Supreme Court granted the stay. ECF No. 46.

## SUMMARY OF ARGUMENT

The district court's decision vacating the Rule exceeds its statutory authority. Federal courts may set aside agency actions only for substantial procedural or substantive reasons as mandated by statute, not simply because they dislike the result. The APA provides courts with authority to set aside agency actions in specific circumstances, not roving, unbounded authority to set aside government rulemakings. The Rule at issue here was adopted through notice-and-comment rulemaking and so could only be repealed through that procedure. Yet, the district court committed legal error by purporting to set aside the Rule without observing the process the APA requires. The court did not purport to reach the merits of Plaintiffs' challenges or find that every aspect of the Rule, or even a single aspect of the Rule, was actually unlawful.

The district court inferred from this Court's endorsement of remand without vacatur in cases where the agency action was found erroneous that remand with vacatur can be appropriate in cases where the action has not been found erroneous. The distinction is outcome determinative

here because the APA allows courts to set aside agency action only upon finding that the rule is unlawful. The district court also relied on "equity" as authorizing it to vacate the Rule without an adjudication on the merits, but the APA provides the exclusive source for the district court's authority to vacate any rule (including providing the only relevant waiver of sovereign immunity). Finally, even if it were proper for the district court to apply the *Allied-Signal* test, the district court's application of that test was erroneous. The Plaintiffs presented an insufficient record as to the first factor and the district court ignored the substantial and predictable disruptions of immediate vacatur of the Rule.

## ARGUMENT

## I. The APA Precludes The District Court From Vacating A Rule Without Finding It Unlawful Based on Review of the Full Administrative Record and Briefing on the Merits

**A.** Federal courts may "set aside" federal agencies' actions "only for substantial procedural or substantive reasons as mandated by statute, not simply because the court is unhappy with the result reached." *Vt. Yankee*, 435 U.S. at 558 (citation omitted). Judicial authority is limited in this manner by the doctrine of sovereign immunity, which provides that "[t]he United States cannot be [sued] in their courts without their

consent, and in granting such consent Congress has an absolute discretion to specify the cases and contingencies in which the liability of the government is submitted to the courts for judicial determination." *Schillinger v. United States*, 155 U.S. 163, 166 (1894). In reviewing agency action, federal courts must be mindful not to go "[b]eyond the letter of" congressional consent to such judicial review, "no matter how beneficial [courts] may deem, or in fact might be, their possession of a larger jurisdiction over the liabilities of the government." *Id.* at 166.

The APA vests federal courts with authority to "set aside" agency actions in specific, statutorily defined circumstances. 5 U.S.C. § 706(2). Courts may only vacate agency actions when, as relevant here, those actions are "found" to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "without observance of procedure required by," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.*; *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Prior to making a finding of noncompliance with the APA's preconditions to "set aside" an agency action, 5 U.S.C. § 706(2), a reviewing court may only "to the extent

necessary to prevent irreparable injury, . . . issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705 (emphases added); *see generally Sampson v. Murray*, 415 U.S. 61, 69 (1974). Congress further provided that before making any of "the foregoing determinations, the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706(2); *Volpe*, 401 U.S. at 419–20.

The APA does not grant to federal courts roving, unbounded authority to vacate or set aside federal government rulemaking as those courts may conclude equity supports. Instead, when Congress waived sovereign immunity in the APA, it expressly preserved all "other limitations on judicial review" and the "duty of the court[s] to . . . deny relief on any other appropriate legal or equitable ground." 5 U.S.C. § 702(1); *Darby v. Cisneros*, 509 U.S. 137, 153 (1993) ("The elimination of the defense of sovereign immunity [in § 702] did not affect any other limitation on judicial review that would otherwise apply under the APA."). Importantly, the ultimate remedy for an APA violation—vacatur of agency action—cannot be awarded until after the parties' rights are

adjudicated on the merits. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976) ("It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading."); *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 74 (1992) ("Federal courts cannot reach out to award remedies when the Constitution or laws of the United States do not support a cause of action."); *see also* H.R. Rep. 94-1656 (1976) at 12 (non-exclusive list of grounds for denying relief "[un]affected or change[d]" by § 702); S. Rep. 94-996 (1976) at 11 (same). Thus, absent a rule being administratively repealed or judicially set aside in strict accordance with the APA, it "remains in force . . . and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it." *United States v. Nixon*, 418 U.S. 683, 696 (1974).

Under these bedrock principles, a court has the authority to vacate a rule that an agency adopts through notice-and-comment rulemaking only if it finds "substantial procedural or substantive reasons [for doing so] as mandated by statute." *Vt. Yankee*, 435 U.S. at 558 (citation omitted). "The APA establishes the procedures federal administrative agencies [must] use for 'rule making,' defined as the process of

'formulating, amending, or repealing a rule.'" *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 95 (2015); 5 U.S.C. § 551(5); *see also NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 764 (1969) ("There is no warrant in law for the Board to replace the [APA] statutory scheme with a rulemaking procedure of its own invention."). "Section 4 of the APA, 5 U.S.C. § 553, prescribes a three-step procedure for [the] so-called 'notice-and-comment rulemaking.'" *Perez*, 575 U.S. at 95–96 (i.e., notice, a public comment period, and a concise general statement of the rule's basis and purpose); *see supra* at 10–11. Any contrary view would permit agencies to wipe away rules of a prior Administration, supplanting Congress's carefully laid plan for the repeal of regulations, based only upon policy preferences and not "constitutional prescriptions or [otherwise] rooted in the language of the APA itself." Antonin Scalia, Vermont Yankee*: The APA, The D.C. Circuit, and The Supreme Court*, 1978 Sup. Ct. Rev. 345, 363.

**B.** The district court's decision below to vacate the Rule exceeds its statutory authority. The court purported to vacate an agency rule that is subject to the APA, without complying with any of the requirements for doing so under the APA.

As an initial matter, EPA adopted the Rule through notice-and-comment rulemaking, which makes it subject to repeal only in accordance with the APA. *See supra* at 10–11; 5 U.S.C. § 706(2). In August 2019, EPA published notice of a proposal to update the existing regulations on CWA water quality certifications to, among other things, finally bring them in line with the 1972 CWA amendments. 84 Fed. Reg. 44,080. EPA then considered and responded to numerous public comments on the proposal. 85 Fed. Reg. at 42,213. In July 2020, EPA promulgated the Rule in the Federal Register, and it became effective in September 2020. *Id.* at 42,210. Neither EPA nor any court stayed the effectiveness of the Rule. 5 U.S.C. § 705. As a result, until and unless the Rule is either repealed by EPA through notice-and-comment rulemaking or set aside by a court in accordance with the APA, it "remains in force . . . and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it." *Nixon*, 418 U.S. at 696.

Yet, the district court committed legal error by purporting to "set aside" the Rule without observing the process the APA requires. The court did not have before it the whole record of the agency action, which EPA was still in the process of completing when the court stayed all

-22-

deadlines pending EPA's potential reconsideration of the Rule, 3-ER-471–72, or even only the relevant parts of it, as required by the APA, 5 U.S.C. § 706(2). The court also only had before it limited papers filed by the parties, none of which actually discussed the substantive merits of the Rule and merely addressed the *Allied-Signal* factors for vacatur, 2-ER-207–55; 3-ER-259–479. Indeed, the court did not even permit or consider merits briefing on the legality of each aspect of the Rule and had before it, at most, only limited briefing on one aspect—the so-called "scope of certification" provision, 1-ER-15–17—and a list of "potential revisions EPA is considering" to the Rule, 1-ER-18 (emphasis added).

The court did not purport to reach the merits of the plaintiffs' challenges or find that every aspect of this complicated Rule—or even any aspect of the Rule—was actually "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," after a "review [of] the whole record," further underscoring the illegality of the court's actions. 5 U.S.C. § 706(2). Having found for itself the power to vacate agency action outside of the APA's exclusive judicial processes, the district court purported to rely on the D.C. Circuit's *Allied-Signal* test for remand without vacatur, *see* 988 F.2d 146, but that test only applies to

vacatur of rules already determined to be legally "flawed" under the APA, *CCAT*, 688 F.3d at 992; 5 U.S.C. § 706(2). Although Plaintiffs presented an obviously insufficient record and argument as to the first *Allied-Signal* factor, focusing only on a fraction of the Rule's provisions based on litigation statements by EPA, 2-ER-239–44; 3-ER-281–82; *see Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212–13 (1988); *Volpe*, 401 U.S. at 419, the district court focused on the Rule's scope-of-certification provision as "antithetical" to this Court's decision in *PUD No. 1*. 1-ER-17 (emphasis omitted). The court scolded EPA for "depart[ing] from what the Supreme Court dubbed the most reasonable interpretation of the statute," *id.*, but itself ignored that the Supreme Court held only that EPA's then-applicable construction of Section 401 was "a reasonable interpretation," *PUD No. 1*, 511 U.S. at 712; *see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (change in agency interpretation is not invalidating as long as adequately explained); *Rust v. Sullivan*, 500 U.S. 173, 186 (1991) (similar).

**C.** The district court's justifications for its vacatur decision are contrary to the statutory text and Supreme Court and Ninth Circuit caselaw. The district court inferred that this Court's endorsement of

remand without vacatur *in cases where agency action was found erroneous* meant that remand with vacatur is appropriate in cases where the action has not been found erroneous. 1-ER-11. But those cases involved different circumstances than those presented here, and the district court erred in flipping this Court's reasoning on its head. In *California Communities Against Toxics v. EPA*, 688 F.3d 989 (9th Cir. 2012), no party defended as legally permissible EPA's reasons for adopting the rule, with EPA seeking to salvage the rule based on new reasoning not found in the administrative record, 688 F.3d at 993, which it cannot do, *see id.* (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). And the Court there, despite explicitly finding the agency's rule "invalid," nevertheless granted remand without vacatur. *Id.* at 993–94. In *Pollinator Stewardship Council v. U.S. E.P.A.*, 806 F.3d 520 (9th Cir. 2015), the court applied the *Allied-Signal* test only after determining that the agency acted without reasoned decision-making. 806 F.3d at 532. The district court made no such finding here, and these decisions only support Intervenors' position.

The district court relied chiefly on *Center for Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236 (D. Colo. 2011), where the court held that

"because vacatur is an equitable remedy, and because the APA does not expressly preclude the exercise of equitable jurisdiction, the APA does not preclude the granting of vacatur without a decision on the merits." 1-ER-12. But that case is both wrongly decided and factually distinguishable.

*Native Ecosystems* is wrong. The court there cites only a law review article for the proposition that "the language of § 706(2) is mandatory, but not exclusive," and "[i]t does not expressly limit a reviewing court's authority to set-aside an agency's action." 795 F. Supp. 2d at 1241. The court then held that "[b]ecause there is no express jurisdictional limitation in the APA, a district court retains its equitable discretion, and "vacation of an agency action without an express determination on the merits is well within the bounds of traditional equity jurisdiction." *Id.* That reasoning is flawed for at least three reasons.

First, the law review article addressed vacatur *after* a judicial finding of legal error. Ronald M. Levin, *"Vacation" at Sea: Judicial Remedies and Equitable Discretion in Administrative Law*, 53 Duke L.J. 291, 291–92 (2003).

Second, *Native Ecosystems* does not address the question of whether authority to vacate agency actions in final orders without finding them unlawful was ever a recognized equitable remedy. It is true that federal courts "retain traditional equitable discretion," *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982), but that discretion is limited to "the jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789 (1 Stat. 73)," which "did not include the power to create remedies previously unknown to equity jurisprudence." *Grupo Mexicano de Desarrollo, SA v. Alliance Bond Fund*, 527 U.S. 308, 318, 332 (1999). The *Native Ecosystems* court did not even address the question of whether pre-adjudication vacatur has any analog in the precedent of the English High Court of Chancery.

Third, the *Native Ecosystems* court did not confront the settled principle that equity cannot be invoked to evade limits imposed by law. The court acknowledged that express statutory foreclosure of an equitable remedy could limit the court's traditional equitable discretion. *Native Ecosystems*, 795 F. Supp. 2d at 1241. But what it ignores is that "[u]nless a statute in so many words, *or by a necessary and inescapable*

-27-

*inference*, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Porter v. Warner Holding Co.*, 328 U.S. 395, 397–98 (1946) (emphasis added). As the Supreme Court said, "[o]f course, Congress may intervene and guide or control the exercise of the courts' discretion." *Weinberger*, 456 U.S. at 313 (1982). This Court has applied that principle to a statute materially similar to the APA. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co. (AZ)*, 632 F.3d 1111, 1121 (9th Cir. 2011). This Court found a statute that "list[ed] only injunctive relief to the exclusion of other equitable remedies" foreclosed restitution and disgorgement by providing "a different scheme of enforcement." *Id.* As this Court explained, "it 'is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.'" *Id.* The same principle applies here. The APA expressly provides for vacatur of rules found to be unlawful and so necessarily forecloses vacatur without such a finding as a matter of equity.

*Native Ecosystems* is also factually different as there the federal agency confessed error, 795 F. Supp. 2d at 1238–39, and EPA did not do

so here. That distinction is meaningful as the confession of error might be considered an admission that the action was unlawful, thus providing the legal predicate for vacatur. But even with confession of error, courts have concluded that the text of the APA precludes vacatur absent a judicial finding that the agency action was unlawful. *See, e.g., Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135–36 (D.D.C. 2010). Otherwise, the agency could "do what [it] cannot do under the APA, repeal a rule without public notice and comment, without judicial consideration of the merits." *Id.* at 136 (quoting *Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 5 (D.D.C. 2009)).

The district court nevertheless concluded that "because vacatur is an equitable remedy, and because the APA does not expressly preclude the exercise of equitable jurisdiction, the APA does not preclude the granting of vacatur without a decision on the merits." 1-ER-12 (citation omitted). Neither contention can withstand scrutiny under the APA and Supreme Court precedent.

The district court's reasoning gets the APA exactly backwards. The APA only permits vacatur of a rule in limited, statutorily defined circumstances, 5 U.S.C. § 706(2), consistent with the Supreme Court's

interpretations of the APA, requiring courts "to engage in a substantial inquiry" about whether a rule is lawful before even considering vacatur, *see Volpe*, 401 U.S. at 415–16. And, given that the APA expressly preserves all "other limitations on judicial review" and the "duty of the court[s] to . . . deny relief on any other appropriate legal or equitable ground," 5 U.S.C. 702(1), there is simply no ground faithful to the text of the APA that would allow a court to vacate a rule never found unlawful under 5 U.S.C. § 706.

The district court's reliance on "equity" as authorizing it to vacate the Rule without an adjudication on the merits is also inconsistent with the APA. 1-ER-11–12. The court never explained, beyond broad assertions of its equitable jurisdiction, from where any such broad authority might derive. Under the APA, courts may only vacate agency actions when those actions are "found" to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "without observance of procedure required by," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2); *Volpe*, 401 U.S. at 416. And the court may do so only after reviewing the "whole record," or relevant parts cited by the parties.

5 U.S.C. § 706(2). Nothing in "equity" allowed the district court to ignore the clear statutory limitations on judicial review established by Congress to set aside a rule without finding it unlawful.

Further, Congress's limited waiver of sovereign immunity in the APA also forecloses the district court's reasoning. "The elimination of the defense of sovereign immunity [in 5 U.S.C. § 702] did not affect any other limitation on judicial review that would otherwise apply under the APA." *Darby*, 509 U.S. at 153. Given that "Congress has an absolute discretion to specify the cases and contingencies in which the liability of the government is submitted to the courts for judicial determination," *Schillinger*, 155 U.S. at 166, the APA's precise (and exclusive) grounds upon which an agency action may be "set aside," 5 U.S.C. § 706(2), clearly limit the courts' discretion. Thus, rule set aside may occur "only for substantial procedural or substantive reasons as mandated by statute, not simply because the court is unhappy with the result reached." *Vt. Yankee*, 435 U.S. at 558 (emphasis added) (citation omitted). No principle of equity allowed the district court to ignore the APA's and sovereign immunity's limitation on its authority.

**II.    The District Court's Application Of The *Allied-Signal* Factors Was Erroneous, Even If It Were Proper To Apply That Test Here**

As noted above, *supra* pp. 17–31, the *Allied-Signal* test has no bearing on this case because the district court had no authority to vacate the Rule without finding it statutorily unlawful or improper.  Indeed, only after a finding that an agency determination is unlawful under 5 U.S.C. § 706(2) may a court address the two-factor test under *Allied-Signal* for whether it should vacate a rule or permit a lesser remedy while remand proceedings continue before the agency.  *See Allied-Signal*, 988 F.2d at 150–51; *Pollinator*, 806 F.3d at 532.  And here, there was simply no finding of unlawfulness that could trigger *Allied-Signal*'s framework.

Nevertheless, even if the *Allied-Signal* test somehow applied to the question of vacatur below, the district court incorrectly applied it.  Under the first *Allied-Signal* factor, the court asks how "serious[ ]" the agency's errors are in order to determine whether vacatur of the rule is necessary. *Allied-Signal*, 988 F.2d at 150.  Second, a court must consider "the disruptive consequences" of the vacatur.  *Id.* at 150–51.  Even assuming these factors have any relevance without a finding of unlawfulness, the district court erred in applying them here.

**A.** Plaintiffs presented an insufficient record and argument as to the first *Allied-Signal* factor, which is sufficient enough to reverse. The Plaintiff States and Plaintiff Groups relied almost entirely on their erroneous contention that EPA admitted the Rule's illegality in various statements. *See* 3-ER-281–82; 2-ER-239–45. The Plaintiff Tribes, in turn, merely argued that EPA "failed to provide sufficient justification for departing from a half century of practice and policy related to the interpretation and implementation of Section 401" without explanation for how the Rule would be more protective of water quality. 3-ER-432–33. When the Plaintiffs did attempt to make a few substantive arguments, they failed to support the broad remedy of full vacatur, merely raising discrete concerns with individual sections of the Rule. 3-ER-265–75, 281–82. Plaintiffs addressed at most a fraction of the Rule's provisions based on litigation statements by the EPA (not the Rule itself), only alluded to "other detrimental provisions" of the Rule, and offered no severability analysis whatsoever. 3-ER-268, 281–82; *see Carlson v. Postal Regulatory Comm'n*, 938 F.3d 337, 351–52 (D.C. Cir. 2019).

Ignoring these problems, the district court focused on the Rule's scope-of-certification provision as "antithetical" to the Supreme Court's

decision in *PUD No. 1*, contending that EPA did not "reasonably explain[ ] the change." 1-ER-17. While chastising EPA for "depart[ing] from what the Supreme Court dubbed the most reasonable interpretation of the statute," *id.*, the district court ignored that the Supreme Court held only that EPA's then-applicable construction of Section 401 was "a reasonable interpretation" or "most reasonably read" that way. *PUD No. 1*, 511 U.S. at 712. That does not mean it was the *only* reasonable interpretation, such that the agency could not adopt another reading as part of its delegated authority, *see Brand X*, 545 U.S. at 981. Simply put, EPA's change does not "compel[ ] the conclusion that the current rule is unreasonable," 1-ER-17, and EPA's more-recent interpretation of Section 401 is both reasonable and owed deference. The district court's reliance on post-enactment litigation statements by EPA for its contrary conclusion, 1-ER-18, further underscores the court's errors. *See CCAT*, 688 F.3d at 993.

The district court's complete vacatur of the entire Rule was also without any coherent justification. Plaintiffs did not even challenge many portions of the Rule in the vacatur briefing, *see, e.g.*, 40 C.F.R. §§ 121.11–121.16, and several portions of the Rule merely codify what

-34-

federal courts have held the CWA requires, *see N.Y. State Dep't of Envtl. Conservation*, 884 F.3d at 455; *Alcoa Power Generating Inc.*, 643 F.3d at 972. There is ample reason to conclude EPA would have adopted those other provisions, which are all severable from the scope-of-certification rule, regardless of whether scope-of-certification was "foundation[al]," 1-ER-15, for other parts of the Rule, *see Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984); *Carlson*, 938 F.3d at 351–52. Yet, the district court never even purported to conduct a severability analysis.

The district court relied on *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 681 (9th Cir. 2021), for the principle that courts "ordinarily do not attempt, even with the assistance of agency counsel, to fashion a valid regulation from the remnants of the old rule." But that portion of *East Bay* quoted *Harmon v. Thornburgh*, 878 F.2d 484 (D.C. Cir. 1989), which made that point only after explaining that "[w]hen a court finds that an agency regulation is invalid in substantial part, *and that the invalid portion cannot be severed from the rest of the rule*, its typical response is to vacate the rule and remand to the agency," *id.* at 494 (footnote omitted; emphasis added). Thus, the district court's failure to conduct a severability analysis was error, inconsistent with Supreme

Court precedent, and will generate a circuit split if affirmed. Indeed, the upshot to the district court's vacatur is that—in reliance on its own divinations based on EPA's post-action statements—the Court apparently reinstated a rule EPA long-ago suggested was inconsistent with the 1972 amendments to the Clean Water Act. *See* NPDES; Revision of Regulations, 44 Fed. Reg. 32,854, 32,856 (June 7, 1979).

**B.** The district court also erred in its consideration of the second *Allied-Signal* factor by ignoring the substantial and predictable disruptions the immediate vacatur of a (not-unlawful) Rule has caused. Vacating the Rule allows States to use outdated rules to exert control over activities in other States, including Intervenor-Appellants and to protect their own industries, *see, e.g.*, 3-ER-531-534, increasing the cost of some interstate projects and fully defeating others, with attendant harms to other States' economies and ability to develop their natural resources, *see* 3-ER-481–529, and upending the progress agencies have made to improve and make transparent certification procedures for industry participants.

Vacatur has upended many of the important protections the Rule established, causing grave confusion and harm to States and industries.

The Rule provides "clarity" to industry actors by establishing regulatory definitions for key statutory terms not defined in the CWA. 40 C.F.R. § 121.1. It also establishes that the "scope of certification" under Section 401 "is limited to assuring that a discharge from a Federally licensed or permitted activity will comply with water quality requirements." *Id.* § 121.3. And it establishes clear rules for when the one-year certification period begins and ends, *id.* §§ 121.5–9, explains how waiver of the certification requirement can occur proactively or by operation of law, *id.* §§ 121.8–9, and further defines EPA's role as a certifying authority and advisor, among other things, *id.* §§ 121.13–16. Intervenor-Appellants intervened in this case precisely to defend the Rule against challenges designed to eliminate these and others of the Rule's protections and return to the exact prior system of abuses, which the district court's vacatur order ostensibly reinstates. To have the Rule repealed nationwide by a single judge—without even finding the Rule unlawful— deprives them of the Rule's protections, and does so by circumventing one of the APA's core protections. 5 U.S.C. §§ 553(b), (c), 551(5).

This unlawful deprivation of the Rule's protections imposes harms on the regulators and regulated industries—including Intervenor-

Appellants—who have faced and will continue to face substantial disruptions in Section 401-related enterprises as a result of the whipsawing effect of the district court's nationwide vacatur. The district court essentially "restructure[d]" this corrective regulatory regime, to the detriment of the reliance interests the regulated industries developed on the Rule. *See California v. FERC*, 495 U.S. 490, 500 (1990). For example, without the Rule, previously offending States can now return to their prior practice of delaying their consideration of Section 401 certifications beyond one year, contrary to the Rule's clear limitation. *See* 40 C.F.R. §§ 121.5–9. Indeed, a currently pending case in the D.C. Circuit, *Turlock Irrigation Dist. v. FERC*, No. 21-1120 (D.C. Cir. Dec. 8, 2021), shows how the Rule's vacatur induces and allows for this sort of delaying gamesmanship. There, the State of California engaged in a denial-without-prejudice scheme aimed plainly at evading 33 U.S.C. § 1341(a)(1)'s one-year limit. *See Turlock Irrigation Dist. & Modesto Irrigation Dist.*, 175 FERC ¶ 61,144, 61,926–27 PP 1–7 (May 21, 2021) (Danly, Comm'r, dissenting). That evasive scheme is contrary to the Rule, *see* 40 C.F.R. §§ 121.5–9; 85 Fed. Reg. at 42,236, but Turlock and Modesto—both members of Intervenor-Defendant-Appellant National

Hydropower Association—could not rely upon the Rule's protections because of the district court's vacatur below, as the Federal Energy Regulatory Commission forcefully argued, *see* FERC Resp. Br.47, *Turlock Irrigation Dist. v. FERC*, No. 21-1120 (D.C. Cir.) (citing *In re Clean Water Act Rulemaking*, 2021 WL 4924844 (N.D. Cal. Oct. 21, 2021)).

Similarly, without the Rule's "scope of certification" provision, certifying authorities are no longer limited by the Section 401 regulations "to assuring that a discharge from a Federally licensed or permitted activity will comply with water quality requirements" only, and can resume considering non-water-quality-related, project-killing conditions when granting their "water quality" certifications for disfavored industries or projects, all of which was plainly forbidden by the Rule. 40 C.F.R. § 121.3; 85 Fed. Reg. at 42,232. Each of these inevitable regressions disrupts the thoughtful certification system the Rule created, destabilizing certification processes nationwide.

Vacatur also deeply harms State Intervenor-Appellants' constitutional rights and sovereign interests. Allowing certain "individual States free to burden commerce . . . among themselves" was among "the major defects of the Articles of Confederation, and a

-39-

compelling reason for the calling of the Constitutional Convention of 1787." *Michelin Tire Corp. v. Wages*, 423 U.S. 276, 283 (1976). Indeed, particular "dissatisfaction" came from "the peculiar situation of some of the States, which having no convenient ports for foreign commerce, were subject to be taxed by their neighbors, [through] whose ports, their commerce was carr[i]ed on." *Id.* (quoting Records of the Federal Convention of 1787 (M. Fanand ed. 1966)). But now, a State is not permitted to "use the threat of economic isolation" to control its sister states. *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 379 (1976). Yet, certain States violating this quintessential norm and attempting to control other States' commerce through the Section 401 permitting process was one of the reasons Intervenor-Appellants petitioned for the Rule, *see, e.g.*, 2-ER-294–95, 3-ER-481–529, 531-534, and such foundational constitutional harms will assuredly return in light of vacatur.

The district court flatly ignored these clear disruptions, instead contending simply that, because "[t]he rule has only been in effect for thirteen months" and was "under attack since before day one," there was "insufficient time for institutional reliance to build up around the current

rule," while also dismissing Intervenors-Appellants' submitted disruptive effects as merely "hypothetical procedural issues." 1-ER-19. But, as shown above, the disruptive consequences Intervenors presented to the court are very real, and have come to fruition in many ways, *supra* pp. 36–40, and the court's dismissive approach to those disruptions was clearly wrong and violated *Allied-Signal*'s second step.

## CONCLUSION

The decision below should be reversed and the district court instructed to either grant the Federal Defendants' motion to remand without vacatur or deny the motion and proceed to merits briefing.

Dated: April 6, 2022                    Respectfully submitted,

/s/ George P. Sibley, III              /s/ Misha Tseytlin
GEORGE P. SIBLEY, III*                 MISHA TSEYTLIN
HUNTON ANDREWS KURTH LLP               TROUTMAN PEPPER HAMILTON
Riverfront Plaza, East Tower           SANDERS LLP
951 East Byrd Street                   227 W. Monroe Street,
Richmond, VA 23219                     Suite 3900
(804) 788-8262                         Chicago, IL 60606
(804) 788-8218 (fax)                   (608) 999-1240
gsibley@huntonak.com                   (312) 759-1939 (fax)
                                       misha.tseytlin@troutman.com
DIERDRE G. DUNCAN
ERICA N. PETERSON                      CHARLES SENSIBA
HUNTON ANDREWS KURTH LLP               TROUTMAN PEPPER HAMILTON
2200 Pennsylvania Ave., NW             SANDERS LLP

Washington, DC 20037
(202) 955-1932
dduncan@huntonak.com
epeterson@huntonak.com

CLARE ELLIS
HUNTON ANDREWS KURTH LLP
50 California Street
Suite 1700
San Francisco, CA 94111
(415) 975-3708
(415) 975-3701 (fax)
cellis@huntonak.com


*Attorneys for Intervenor-
Defendants-Appellants
American Petroleum Institute
and Interstate Natural Gas
Association of America*

401 9th Street NW
Suite 1000
Washington, DC 20004-2146
(202) 274-2850
(202) 274-2994 (fax)
charles.sensiba@troutman.com

ELIZABETH HOLT ANDREWS
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Three Embarcadero Center
Suite 800
San Francisco, CA 94111-4057
(415) 477-5700
(415) 477-5710 (fax)
elizabeth.andrews@troutman
.com


*Attorneys for Intervenor
Defendant-Appellant National
Hydropower Association*

/s/ Joseph S. St. John

JEFF LANDRY
ATTORNEY GENERAL
ELIZABETH B. MURRILL,
SOLICITOR GENERAL
JOSEPH S. ST. JOHN,
DEPUTY SOLICITOR
LOUISIANA DEPARTMENT
OF JUSTICE
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6739
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

*Attorneys for Intervenor Defendant-Appellant State of Louisiana*

/s/ James Kaste

James Kaste
  Deputy Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895 (phone)
(307) 777-3542 (fax)
james.kaste@wyo.gov

Additional Counsel:

LESLIE RUTLEDGE
  Attorney General of Arkansas

LYNN FITCH
  Attorney General of Mississippi

ERIC SCHMITT
  Attorney General of Missouri

AUSTIN KNUDSEN
  Attorney General of Montana

KEN PAXTON
  Attorney General of Texas

PATRICK MORRISEY
  Attorney General of West Virginia

* Pursuant to Circuit Rule 25-5(e), I hereby attest that concurrence in the filing of the document has been obtained from each of the other Signatories. /s/ George P. Sibley, III

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | No. 21-16958 (lead), 21-16960, 21-16961

I am the attorney or self-represented party.

**This brief contains** | 8,144 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one):*

- ⦿ complies with the word limit of Cir. R. 32-1.
- ○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*
    - ○ it is a joint brief submitted by separately represented parties;
    - ○ a party or parties are filing a single brief in response to multiple briefs; or
    - ○ a party or parties are filing a single brief in response to a longer joint brief.
- ○ complies with the length limit designated by court order dated |          |.
- ○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ George P. Sibley, III | **Date** | April 6, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | No. 21-16958 (lead), 21-16960, 21-16961

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

| | |
|---|---|
| John B. Howard, Jr.<br>Office of the Attorney General<br>200 Saint Paul Place<br>20th Floor<br>Baltimore, MD 21202 | Matthew Ireland<br>Office of Massachusetts Attorney General<br>18th Floor<br>One Ashburn Place<br>Boston, MA 02108 |

**Description of Document(s)** *(required for all documents)*:

Intervenor-Defendants-Appellants' and Intervenor-Appellants' Opening Brief

**Signature** | /s/ George P. Sibley, III | **Date** | 4/6/2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15** | *Rev. 12/01/2018*